**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| YILEISY CAMPOS-MARTINEZ<br><br>    Plaintiff<br><br>    v.<br><br>SUPERINTENDENCE OF THE CAPITOL OF THE COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>    Defendants | Civ. No. 05-1657(PG) |

**OPINION AND ORDER**

On June 17, 2005, Plaintiff Yileisy Campos-Martinez ("Campos") filed the above-styled and captioned complaint against defendants the Superintendence of the Capitol of the Commonwealth of Puerto Rico; Nelida Santiago ("Santiago"), Superintendent of the Capitol of the Commonwealth of Puerto Rico; Carlos Ramos, Deputy Superintendent of the Capitol of the Commonwealth of Puerto Rico; and Luis Hernandez, Director of the Commonwealth of Puerto Rico Capitol Security Department[1]. Plaintiff alleges that she was discriminated because of her political affiliation and because of her pregnancy. Plaintiff claims that defendants' actions as alleged in the Complaint violate:

---

[1] The individual defendants are sued in their personal and official capacities. The Eleventh Amendment to the United States Constitution bars the extension of the judicial power of the United States to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. While Puerto Rico is not a State, it is treated as such for purposes of the Eleventh Amendment. See Ramirez v. Puerto Rico Fire Services, 715 F.2d 694, 697 (1st Cir. 1983). It is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). Additionally, even though section 1983 provides a federal forum to remedy many deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties," as the "Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Id. at 66 (internal citations omitted). Consequently, neither a state nor its officials acting in their official capacities are "persons" under § 1983. Id. Accordingly, the §1983 claim against defendants in their official capacity must be dismissed pursuant to Fed.R.Civ.P.12(b)(1). See Acevedo-Lopez v. Police Department of the Commonwealth of Puerto Rico, 247 F.3d 26, 28 (1st Cir. 2001) (noting that the Eleventh Amendment has "jurisdictional implications," and thus the immunity conferred by it "can be raised at any time").

Civ. No. 05-1657 (PG)                                                   Page 2

    a)    The First, Fifth, and Fourteenth Amendments to the U.S. Constitution;

    b)    Title VII of the Civil Rights Act, 42. U.S.C. §2000e et. seq.;

    c)    Article II, Sections 1 and 7 of the Constitution of the Commonwealth of Puerto Rico;

    d)    Puerto Rico Law No. 100, of June 30, 1959, as amended by Law No. 121 of 1997; and

    e)    Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 & 5142.

Before the Court is co-defendant Santiago's Motion for Summary Judgment (Docket No. 52.) For the following reasons, the Court **GRANTS IN PART DENIES IN PART** co-defendant's motion.

## BACKGROUND

Campos is a regular and career employee of the Commonwealth of Puerto Rico and is not employed in a trust position. She started working at the Superintendence of the Puerto Rico Capitol in June of 2001. She first labored as an office clerk and was thereafter promoted to secretary. Though not active in politics, Campos alleges she is a sympathizer of the Popular Democratic Party ("PDP").

In the November 2004 elections, the New Progressive Party ("NPP") won a majority of the legislative seats of the Commonwealth of Puerto Rico Senate and House of Representatives. During the previous four years, the Legislature had been controlled by the PDP.

Sometime in January 2005, defendant Santiago was appointed Superintendent of the Puerto Rico Capitol. That same month, co-defendant Carlos Ramos was appointed Deputy Superintendent of the Puerto Rico Capitol. The Superintendence of the Puerto Rico Capitol has enacted a Human Resources Manual of Rules and Regulations. Plaintiff avers that under color of this Manual co-defendants deprived her of her civil and constitutional rights.

Specifically, plaintiff claims that following Santiago's appointment, a pattern of politically motivated discrimination commenced against her. The discriminatory actions included the elimination of her work space and taking away of her desk. She claims that this was done with the sole purpose of

Civ. No. 05-1657 (PG)                                                    Page 3

harassing and humiliating her.

Furthermore, she claims there were derogatory remarks made about her because of her political affiliation. Campos alleges that the discrimination against her and other PDP members included improper pressure on them to force them to resign. She claims this was orchestrated by the Deputy Superintendent, Carlos Ramos, under orders from Santiago.

Campos claims that eventually she was given an ultimatum: either she accept being reassigned to the Security Department or face dismissal. Because she was pregnant, and in desperate need of a job, she accepted the transfer from her secretary position to the security department. She avers that the involuntary transfer to the security department was another attempt to force her to resign because of her political affiliation and pregnancy. The reasons given by defendants for the transfer was that they did not need secretaries in her work area. Campos insists this was a mere pretext. She alleges that once she was transferred an NPP sympathizer replaced her in her former position as a secretary.

With regards to her pregnancy, plaintiff states that defendants were aware of it. She claims that as part of the harassment against her, whenever she had a medical appointment with her ob-gyn, she could not claim a sick day but had to recover for such absences by working on weekends. Also in her new position, she had to perform security duties for which she had no training and which involved substantial personal risk, situation that was aggravated by the fact that she was three months pregnant.  For example, she claims that once she had to stay until eleven or twelve at night providing security to Santiago and in light of the advanced stage of her pregnancy, she would get sleepy and was in no position to offer security to Santiago or anyone in the event of a riot or breach of security. She talked to co-defendant Luis Hernandez about this and told him that she was not going to jeopardize her baby or herself and requested to be assigned to the Security closed circuit monitors.  Her petition was ignored. Campos avers that the discriminatory practices in the security department were orchestrated by co-defendant Luis Hernandez as head of the Security Department of the Capitol Superintendence.

With regards to co-defendant Santiago, Campos claims that she failed to

Civ. No. 05-1657 (PG)                                                    Page 4

put in place employment practices to safeguard and avoid discrimination based on constitutionally protected speech as well as sex-based discrimination, specifically pregnancy-based discrimination.

## DISCUSSION

### I.   Summary Judgment Standard

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002).

### II.  42 U.S.C. § 1983

To state a claim under §1983, plaintiff must allege:(1) that defendants acted under color of state law and (2) that defendants deprived her of a federally protected right. See Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir.2001). Plaintiff alleges that defendant acted under color of state law. Accordingly, the Court reviews whether plaintiff has stated a claim under the

Civ. No. 05-1657 (PG)                                                    Page 5

First Amendment to the U.S. Constitution[2].

    A.    <u>Political discrimination</u>

The First Amendment protects public employees from adverse job decisions based solely on their political affiliation and beliefs. <u>See</u> <u>Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr</u>, 518 U.S. 668, 675 (1996)(internal citations omitted). <u>See</u> <u>Elrod v. Burns</u>, 427 U.S. 347(1976). Under no circumstances may the government "deny a benefit to a person on a basis that infringes his constitutionally protected ... freedom of speech' even if he has no entitlement to that benefit. <u>Umbehr</u>, 518 U.S. at 674(<u>quoting</u> <u>Perry v. Sindermann</u>, 408 U.S. 593, 597(1972)).

To establish a prima facie case of political discrimination, plaintiff must show that there is a causal connection linking defendants' allegedly discriminating acts to plaintiff's political beliefs. <u>See</u> <u>Gonzalez-Pina v. Rodriguez</u>, 407 F.3d 425, 431-432 (1st Cir. 2005); <u>LaRou v. Ridlon</u>, 98 F.3d 659, 662 (1st Cir. 1996). <u>See also</u> <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 75 (1990); <u>Acevedo-Garcia v. Vera-Monroig</u>, 204 F.3d 1, 7 (1st Cir. 2000); <u>Agosto-de-Feliciano v. Aponte-Roque</u>, 889 F.2d 1209, 1217-20 (1st Cir.1989). For political affiliation to be a motivating factor behind an adverse employment action, those responsible for the deprivation of constitutional rights must have had knowledge of the plaintiff's political affiliation. <u>See</u> <u>Goodman v. Pennsylvania Turnpike Comm'rs</u>, 293 F.3d 655, 64 (3d Cir. 2002). <u>See also</u> <u>Umbehr</u>, 518 U.S. at 675( plaintiff "must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor". <u>See</u> <u>Mt. Healthy City Sch. Dist. Bd. v. Doyle</u>, 429 U.S. 274, 287 (1977).

Defendant argues that plaintiff has failed to establish a prima facie case of political discrimination against the appearing defendant.  Santiago

---

[2] Plaintiff also claims defendants violated her rights under the Fifth and Fourteenth Amendment. Defendant does not move for summary judgment on these two claims. The Court, however, must clarify that plaintiff cannot bring any claims under the Fifth Amendment. It is well-settled that the Fifth Amendment "applies to actions of the federal government, not those of private individuals." <u>Gerena v. Puerto Rico Legal Services, Inc.</u>, 697 F.2d 447, 449 (1st Cir. 1983) (<u>citing</u> <u>Public Utilities Commission v. Pollak</u>, 343 U.S. 451, 461 (1952). Here, plaintiff's complaint is brought against state and not federal actors. Accordingly, the Fifth Amendment claim must be dismissed as to all defendants.

Civ. No. 05-1657 (PG)                                                    Page 6

avers that Campos never discussed the allegations in the Complaint with her and that she had no knowledge of plaintiff's political affiliation. Specifically, defendant points to Campos' deposition in which she stated that Campos had no direct evidence that Santiago knew her political affiliation.

To the contrary, Campos claims that her political affiliation could be garnered from her personnel file and because of the time she began working at the Superintendence of the Capitol. Defendant insists, however, that this is insufficient to meet her burden. Because plaintiff bases her allegation that Santiago had knowledge of her political affiliation only on her own inferences and speculation, they argue she cannot show that her political affiliation was a substantial or motivating factor behind the adverse employment action.

Having carefully reviewed the record, the Court finds that summary judgment as to the political discrimination claim is warranted. Plaintiff fails to proffer evidence to show that Santiago knew her political affiliation.

The following facts are undisputed:

1. Campos never personally discussed the allegations in the complaint with Ms. Nelida Santiago. (Docket No. 53, Exh. 1, pg. 62-63, lines 18-8.)

2. Campos did not have any direct evidence that Ms. Santiago knew her political affiliation. (Docket No. 53, Exh. 1, pg 63, lines 9-15.)

3. Campos testified in her deposition that she did not know if Ms. Santiago knew her political affiliation. (Docket No. 53, Exh. 1, pg. 63-64, lines 23-3.)

4. Campos inferred that Santiago knew her political affiliation because it could be garnered from her personnel file and from the time she began working at the Superintendence of the Capitol. (Docket No. 53, Exh. 1, pg. 63-64, lines 9-2.)

5. Campos did not know the political affiliation of Ms. Santiago. She only assumes she belongs to the NPP because of the year she was hired. (Docket No. 53, Exh. 1, pg. 64, lines 7-17.)

Plaintiff testified that she did not have "personal evidence", of Santiago's political affiliation. She stated that she **assumed** Santiago is an NPP affiliate because the NPP won both the House of Representatives and the Senate and the Presidents needed someone of trust. She could not, however, categorically testify what is Santiago's political affiliation. (See Docket

No. 68, Exh. 1, pg. 64, lines 7-17. The only evidence plaintiff proffers to show Santiago's affiliation is Carmen Lourdes Giraud Felix's Statement Under Penalty of Perjury in which she claims that she knows that Santiago is a member of the NPP because the President of the House of Representatives was the one who hired her and because Carlos Ramos told her so. (See Docket No. 68, Exh. 3.) Clearly, Ms. Giraud's assumption and the hearsay statement of Carlos Ramos is insufficient to support plaintiff's claim that Santiago is an NPP affiliate.

Nevertheless, even assuming that in fact Santiago is an active member of the NPP, plaintiff still has to show that Santiago was aware of her political affiliation and that it was the motivation behind the adverse employment actions. See Rivera Cotto v. Rivera, 38 F3d 611, 614 (1st Cir. 1994).

There is simply no evidence that shows that Santiago had any knowledge of Campos' political affiliation or belief. Plaintiff testified that "she didn't know about that" [that defendant Santiago was aware of her political affiliation] "because over there everybody knows everyone's political affiliation, they know of your personal story, so they know about your political affiliation" (Docket No. 68, Exh. I, pg. 63, lines 9-15). She testified that she did not know because the only way Santiago could have found out was if another employee had told her or if Santiago had gone and checked her personnel file and verified the year in which she started working there. Because she commenced working in 2001, she claims that it is obvious that she was an PPD member. This is so because she alleges that everyone entering in 2001 was from the same party. (Docket No. 68, Exh. I, pg. 63-64, lines 16-2). Other than these speculations, Campos proffers no evidence to show that in fact everyone entering in 2001 was a PPD member or that somehow or someway Santiago was informed of this. She does not show that Santiago ever reviewed her file or was made aware of Campos' political affiliation by anyone else.

Causation can only be established if defendant was **actually** aware of plaintiff's political affiliation and acted based on that knowledge. Here, plaintiff has not met her burden of producing sufficient direct or circumstantial evidence with regards to Santiago from which a jury reasonably may infer that plaintiffs' constitutionally protected conduct... was a

Civ. No. 05-1657 (PG)                                                  Page 8

"substantial" or "motivating" factor behind the alleged adverse employment action. See Acevedo-Díaz v. Aponte, 1 F.3d 62-66 (1st Cir. 1993).

What is more, even if the Court were to find that Santiago had knowledge of plaintiff's political affiliation, the record is devoid of evidence that shows her personal involvement in the alleged adverse employment decisions. Campos claims that she **tried** to discuss her employment situation and her transfer to the security department with defendant Santiago but that the latter told her she could not take care of the situation. (Docket No. 68, Exh. I, pg. 11, lines 5-11)(emphasis added). The record only shows that Diana Villegas, her co-worker, talked to Santiago about the situation, the harassment and the political discrimination they were being subjected to for belonging to the Popular Party. There is no evidence, however, showing that it was Santiago the one who took the decision to transfer Campos or that she in fact ordered the transfer or had any role in the adverse employment action alleged.  It is well-settled that to prove that a plaintiff's "political affiliation was a substantial or motivating factor in the adverse decision requires more than [m]erely juxtaposing a protected characteristic-someone else's politics-with the fact that the plaintiff was treated unfairly." Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 52 (1st Cir.2005)(citation omitted).

In sum, the undisputed facts support entering summary judgment in Santiago's favor with regards to plaintiff's political discrimination claim against her. Because we find in defendant's favor, we need not address Santiago's claim that she is entitled to qualified immunity.

### III.  Title VII

Defendant argues that the complaint should be dismissed against her because there is no individual liability under Title VII.

"Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII." Gomez Gonzalez v. Guidant Corp., 364 F.Supp.2d 112, 115-116 (D.P.R. 2005). See Tomka v. Seiler Corp., 66 F.3d 1295 (2nd Cir. 1995); Dici v. Com. of Pa., 91 F.3d 542 (3rd Cir. 1996); Lissau v.

Civ. No. 05-1657 (PG)                                                   Page 9

Southern Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998); Grant v. Lone Star Co., 21 F.3d 649 (5th Cir. 1994) cert. denied, 513 U.S. 1015 (1994); Wathen v. General Elec. Co., 115 F.3d 400, 405-06 (6th Cir. 1997); Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493-94 (7th Cir. 1998); Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377 (8th Cir. 1995); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583 (9th Cir. 1993); Haynes v. Williams, 88 F.3d 898 (10th Cir. 1996); Cross v. Alabama, 49 F.3d 1490, 1504 (11th Cir.1995); Smith v. Lomax, 45 F.3d 402 (11th Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C.Cir.), cert. denied, 516 U.S. 1011 (1995).

Following the majority of the circuit courts, this District Court held that individual defendants are not liable under Title VII. See Gomez Gonzalez, 364 F.Supp.2d at 115. See also Vargas v. Fuller Brush Co. of Puerto Rico, 336 F.Supp.2d 134, 139 (D.P.R. 2004); Velez-Sotomayor v. Progreso Cash and Carry, Inc., 279 F.Supp.2d 65, 72 (D.P.R. 2003); Padilla Cintron v. Rossello Gonzalez, 247 F.Supp.2d 48, 59 (D.P.R. 2003); Cotto v. Citibank, N.A., 247 F.Supp.2d 44, 47 (D.P.R. 2003); Maldonado-Cordero v. AT & T, 73 F.Supp.2d 177, 184 (D.P.R. 1999); Canabal v. Aramark Corp., 48 F.Supp.2d 94, 97 (D.P.R. 1999); Acevedo Vargas v. Colon, 2 F.Supp.2d 203, 206 (D.P.R. 1998); Pineda v. Almacenes Pitusa, Inc., 982 F.Supp. 88, 93 (D.P.R. 1997); Contreras Bordallo v. Banco Bilbao Vizcaya de Puerto Rico, 952 F.Supp. 72, 74 (D.P.R. 1997); Hernandez v. Wangen, 938 F.Supp. 1052, 1065 (D.P.R. 1996); Anonymous v. Legal Services Corp. of Puerto Rico, 932 F.Supp. 49, 51 (D.P.R. 1996). See also Danio v. Emerson College, 963 F.Supp. 61, 62 (D.Mass. 1997); Chatman v. Gentle Dental Center of Waltham, 973 F.Supp. 228, 237 (D.Mass. 1997). Hence, the Title VII claim against Santiago must be dismissed with prejudice.

**IV. Supplemental Law claims**

Usually, when all federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over a plaintiff's supplemental jurisdiction claims. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995). Here, the Court has not dismissed all of plaintiff's federal claims, thus, it will exercise supplemental jurisdiction over her state law claims.

Civ. No. 05-1657 (PG)                                                  Page 10

## **CONCLUSION**

WHEREFORE, the Court **GRANTS IN PART AND DENIES IN PART** co-defendant Santiago's Motion for Summary Judgment. (Docket No. 52.) Accordingly, the Court dismisses the First Amendment and Title VII claims as to co-defendant Santiago, as well as the Fifth Amendment claim as to all defendants.

Trial shall proceed as to the Fourteenth Amendment claim against all defendants, the First Amendment claim against all defendants except Nelida Santiago, the Title VII claims against all defendants except Nelida Santiago, and the Supplemental Law claims against all defendants.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 19, 2007.

                                            S/JUAN M. PEREZ-GIMENEZ
                                            SU.S. DISTRICT COURT